UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————————

|  |  |  |
|---|---|---|
| Scott Smith | ) | Civil Action No. 1:18-cv-11664 |
| PLAINTIFFS | ) |  |
|  | ) |  |
| v. | ) | **FIRST AMENDED** |
| JPMorgan Chase Bank, NA and | ) |  |
| Harmon Law Offices, PC | ) | **C O M P L A I N T** |
| DEFENDANTS | ) |  |
|  | ) |  |

—————————————————————————

## COMPLAINT AND JURY TRIAL DEMAND

## PARTIES

1.      Plaintiffs, Scott Smith, (hereinafter, "Homeowner") is an individual residing at 230 Starboard Lane, Osterville, MA 02655.

2..      Defendant, JPMorgan Chase Bank, NA, (hereinafter, "Chase") is a limited liability company with its principal place of business at 1111 Polaris Parkway, Columbus, OH 43240.

3.      Defendant, Harmon Law Offices, P.C., (hereinafter, "Harmon"), is a Massachusetts professional corporation with its principal place of business at 150 California Street, Newton MA, 02458.

## LACK OF FEDERAL JURISDICTION

4.      Due to the lack of complete diversity, Plaintiff does not contend that the federal courts have jurisdiction to decide this case.

## FACTS

5.      The following facts amend prior averments recited under emergency time conditions to support a temporary restraining order that were made under information and belief with an acknowledgment for the need for further review and amendment for accuracy. This first amendment contemplates future amendments to add parties and expand the scope of wrongdoings by the defendants as additional information and evidence is received and assessed. Homeowner incorporates herein the affidavit attached hereto or to his motion for injunctive relief.

6.      Homeowner owns the property located at 230 Starboard Lane, Osterville, MA 02655 (hereinafter "HOME") and uses it as his primary residence.

7.      The Homeowner continues to hold and use the HOME primarily for personal use.

8.      Defendant, Harmon, bears joint-tortfeasor liability with Chase for its part in advancing an illegal foreclosure and other wrongful debt collection activities, in addition to its direct and individual wrongful conduct as debt collectors and tortfeasors.

9.      Defendants and predecessor creditors and holders of the Mortgage Loan engaged in wrongful and illegal debt-collection and enforcement, including foreclosure activities, in reliance upon non-existent assignments, conveyances or other transfers from a grantor that never held the subject Mortgage Loan, and the subject Mortgage Loan was never validly formed due to naming a non-existent mortgagee, and is otherwise unenforceable due to the expiration of applicable statutes of limitations, fraud, unconscionability, and was and is otherwise hereby rescinded due to mutual mistake of fact or law, and canceled on grounds of common law fraud and material breach. Defendants engaged in wrongful collection and enforcement activities by treating the Mortgage Loan as in default absent an actual default due to accounting errors, imposing prohibited charges, and violations of G.L. ch. 140D, absent satisfaction of conditions precedent, such as granting a right to cure and providing a valid notice of default, filed false affidavits claiming mortgagee and holder status, compliance with the MHA of 2009, its HAMP program, and Sections 35B and 35C of Chapter 244, wrongfully and intentionally denied a loan modification under said programs despite Homeowner having qualified for same, and otherwise failed to strictly comply with the power of sale.

10.     Defendants purport that Chase had acquired the interests, i.e., rights and liabilities, of Washington Mutual Bank, FA with respect to the Mortgage Loan.  (Assignee liability is further established under Section 33 of Chapter 140D).

11.     Homeowner was damaged by the Defendants' conduct by denial of their right to cure because given full and proper accounting and correct amount needed to cure (if any) Homeowner was ready, willing and ability to cure, the loss of clear title to his HOME, damage to his credit, loss of a government program loan modification given his eligibility and qualification therefor, loss of equity caused by the delays from failures to grant a right to cure and/or from wrongfully failing to evaluate Homeowner for a government program loan modification, emotional distress, and statutory damages.

**LOAN ORIGINATION AND CLOSING**
(e.g., Sale, Application, Consummation and Formation)

12.     On or about January 24, 2006 Homeowner gave a promissory note to Washington Mutual Bank, FA ("Washington Mutual Bank, FA").  The Loan# XXXXXX1123 is hereinafter referred to as the "Promissory Note." A copy of the Promissory Note is attached hereto as **EXHIBIT "A"**.

13.     On or about January 24, 2006 Homeowner gave a mortgage on HOME to Washington Mutual Bank, FA. The mortgage given by the Homeowner to Washington Mutual Bank, FA on January 24, 2006, was recorded in the Barnstable County Registry of Deeds of the Land Court, Document No. 1024999 (hereinafter, "MORTGAGE"). A copy of the MORTGAGE is attached hereto as **EXHIBIT "B"**.

The Promissory Note and MORTGAGE are collectively referred to hereinafter as the "Mortgage Loan."

### LACK OF FORMATION[1]

14.     On or about April 4, 2005, following an acquisition merger with Washington Mutual Bank, the entity known as "Washington Mutual Bank, FA" changed its name to "Washington Mutual Bank."

15.     On April 4, 2005, as a result of the merger and name change, from April 4, 2005 to the present day, there has never been another legal entity formed using the name of "Washington Mutual Bank, FA." See, e.g., Washington Mutual, Inc. Form 10-Q for quarter ending March 31, 2005 ("WaMu 3/2005 Form 10-Q"), page 42. A copy of select portions of the WaMu 3/2005 Form 10-Q is attached hereto as **EXHIBIT "C"**.

16.     Washington Mutual Bank, FA was not a division of Washington Mutual Bank, and even if it was, divisions of companies are not cognizable entities under the eyes of the law and thus, lack capacity to contract, sue, be sued, hold realty, etc.[2]

17.     Washington Mutual Bank did not register to do business as "Washington Mutual Bank, FA" in the town of Barnstable, city of Boston, or in any other city or town in the state of Massachusetts or, to the knowledge of Homeowner, anywhere else. A copy of the search of the Boston City Clerk's dba registration office for any assumed names containing "Washington Mutual" and illustrating zero results is attached hereto as **EXHIBIT "D"**.

18.     On or about January 24, 2006, an attempt was made to form a contract (i.e., the Promissory Note) between Homeowner and Washington Mutual Bank, FA. On or about January 24, 2006, Washington Mutual Bank, FA did not exist as a legally cognizable entity and the attempt to form a contract, i.e., the Promissory Note, in the name of Washington Mutual Bank, FA failed for lack of an essential term, i.e., the identity of the parties to the contract.

19.     At all times relevant, Defendants claimed that Chase was the holder of a valid and enforceable Promissory Note and MORTGAGE through an intervening receivership action by the Office of Thrift Supervision ("OTS") appointing the FDIC as receiver of certain Washington Mutual Bank assets, following a series of Washington Mutual entity mergers and name changes of a predecessor holder, with the surviving entity being Washington Mutual Bank and not Washington Mutual Bank, FA.

---

[1] All averments and allegations herein that are contrary to the lack of formation are stated in the alternative.

[2] Black letter holds that ""[D]ivisions of companies are not separate legal entities but, rather, are parts of the corporation to which they belong" and are therefore subject to dismissal "as a matter of law."" Johnson v. IndyMac Mortg. Servicing, 2014 U.S. Dist. LEXIS 55610, at *1-2 n.1 (D. Mass. 2014). Id. quoting, Raytheon Company v. ITT Corporation, 2013 U.S. Dist. LEXIS 140360, 2013 WL 5450414, at *1 (E.D.Tex. Sept. 30, 2013). The Supreme Judicial Court has held that a voluntary unincorporated association cannot be a party to litigation as it has no capacity as such to sue or to be sued. See, Tyler v. Boot and Shoe Workers Union, 285 Mass. 54, 55 (1933).

20.     Chase and other joint-tortfeasors engaged in unlawful debt collection, negative credit reporting, fraud, misrepresentation, and wrongful foreclosure activity to effect the sale of Homeowner's HOME and to seek money and possession of Homeowner's HOME, on the basis of an unenforceable agreement due to lack of formation.

21.     As a result of the lack of formation, the Promissory Note and MORTGAGE were void ab initio, and all activities, including collection by foreclosure or otherwise, to enforce the purported obligations arising therefrom were void and illegal.

### STATUTES OF LIMITATIONS[3]

22.     On or about January 24, 2006, the Mortgage Loan was purportedly closed and consummated.

23.     In or about 2011, the holder of the Promissory Note and MORTGAGE determined the Homeowner to be in default and ultimately sent notice of acceleration to the Homeowner that the full balance of the Promissory Note was due and payable immediately.

24.     Following the notice of acceleration, an action to foreclose under the Servicemembers Civil Relief Act was filed in the Land Court on January 31, 2012, as Docket No. 12 MISC 458785.

25.     The maturity date of the mortgage loan had been accelerated from February 1, 2036 to a date prior to January 31, 2012.[4]

26.     By January 31, 2018, six years after the accelerated due date of the Promissory Note, neither Chase nor any purported or actual noteholder commenced an action to enforce the Promissory Note.

27.     Pursuant to the Uniform Commercial Code ("UCC") six-year limitations period, adopted by the Commonwealth as M.G.L. c. 106, § 3-118, the Promissory Note constitutes a time-barred debt. See, Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 472, 984 N.E.2d 286, 290 (2013) (General Laws c. 106, § 3-118, takes the place of all other statutes of limitations that might otherwise apply to negotiable instruments.").

28.     Following January 31, 2018, Chase, Harmon and other joint-tortfeasors and co-conspirators continued to attempt to collect and enforce the Promissory Note and MORTGAGE by seeking the payment of money and to conduct a non-judicial foreclosure.

29.     On January 12, 2017, Harmon sent a debt collection letter to Plaintiff seeking the payment of money on the basis of the Promissory Note, stating, "**THIS OFFICE IS**

---

[3] All averments and allegations herein that are contrary to the expiration of applicable limitations periods are stated in the alternative.

[4] Although Homeowner has yet to locate a copy of the acceleration notice, it had to have preceded Chase's filing of the Land Court action and, given that the longest applicable period of limitations is 6-years, an acceleration of the Promissory Note at any time during 2011 would yield the same result.

ATTEMPTING TO COLLECT A DEBT."

30.    On May 29, 2018, Harmon sent a debt collection letter to Plaintiff containing a copy of the Promissory Note and seeking the payment of money under threat of foreclosure, stating, "**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT**."

31.    Harmon and Chase's collection and attempts to collect on the Promissory Note when they knew, or had reason to know based on a good faith determination, that it was a time-barred debt, constitutes an unfair or deceptive practice pursuant to 940 CMR 7.07(24).

32.    On July 18, 2018, Chase was placed on actual notice of the time-barred status of the Promissory Note via a written demand letter pursuant to Chapter 93A.

33.    Upon the expiration of the Promissory Note pursuant to the 6-year statute of limitations under M.G.L. c. 106, § 3-118, the lien securing the debt, i.e., the MORTGAGE, no longer had an obligation to secure and was rendered a nullity. See, Deutsche Bank Nat'l Tr. Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 254 (2015); Eaton v. Fannie Mae, 462 Mass. 569, 584-85 (2012), *quoting*, RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 1.1 comment (1997) ("Unless it secures an obligation, a mortgage is a nullity.").

\*\*\*

34.    By January 31, 2017, five years from the expiration of the accelerated maturity date of the Promissory Note, Chase was prohibited under the Obsolete Mortgage Statute from exercising the power of sale in the MORTGAGE, making entry on Homeowner's HOME, taking possession, and initiating foreclosure proceedings. See, M.G.L. c. 260, § 33.

35.    On or by January 31, 2017, five years from the expiration of the accelerated maturity date of the Promissory Note, the MORTGAGE had been discharged by operation of law pursuant to M.G.L. c. 260, § 33.

36.    On or after January 31, 2017, all of Harmon's and Chase's collection, foreclosure and enforcement activities entailed the prohibited exercise of the power of sale in violation of Chapter 260, Section 33 and Massachusetts debt collection laws (e.g., M.G.L. c. 93, § 49), and an unfair and deceptive trade practice against Homeowner.

37.    Defendants' conduct, in attempting to enforce the expired, obsolete and previously discharged MORTGAGE was knowing and intentional because the mortgage became obsolete and, as a lien on the HOME, discharged by operation of law without any further notice or action required of Homeowner as the owner of the equity of redemption. M.G.L. c. 260, § 33.[5]

---

[5] "Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property and, in the case of registered land, upon the payment of the fee for the recording of a discharge, the mortgage shall be marked as discharged on the relevant memorandum of encumbrances in the same manner as for any other mortgage duly discharged."

38.    On July 18, 2018, Chase was placed on actual notice of the expired, obsolescence and discharged status of the MORTGAGE via a written demand letter pursuant to Chapter 93A.

### NOTEHOLDER STATUS[6]
#### (SLANDER OF TITLE AND FRAUD)

39.    In a letter from Chase dated July 12, 2018, Chase describes a receivership action by the OTS and attaches the Purchase & Assumption Agreement dated September 25, 2008 ("PAA"), claiming that "pursuant to [the PAA] the FDIC sold to Chase WaMu's loans and loan commitments."

40.    The PAA provided by Chase is an incomplete, 44-page agreement between the FDIC and Chase, where, in fact, the balance of the contract and the complete agreement with the FDIC and Chase is 118 pages long.

41.    Homeowner disputes the implication of Chase's statement that the PAA it provided specifically included the subject Mortgage Loan.

42.    Chase's statement is contradicted by public information and the known business practices of Washington Mutual, Inc. and its subsidiaries, at the times in question, to transform its loan assets into securities whereby its loans were bundled into asset-backed security trusts and sold off to investors. See, **Ex. C** (WaMu 3/2005 Form 10-Q, p. 43.)

43.    The customary practices of Washington Mutual Inc. and its mortgage lending entities, including Washington Mutual Bank, to securitize its residential mortgage loans continued throughout the year 2006 when Homeowner's loan was issued until going into receivership in 2008. See, Washington Mutual, Inc. Form 10-Q for quarter ending March 31, 2006 ("WaMu 3/2006 Form 10-Q"). A copy of select portions of the WaMu 3/2006 Form 10-Q is attached hereto as **EXHIBIT "E"**.

44.    Comparing the off-balance sheet entries and data between the WaMu 3/2005 Form 10-Q and WaMu 3/2006 Form 10-Q reveals that it is more likely than not that by 2008, the subject Mortgage Loan had been sold into the securitization paradigm and no Washington Mutual entity or subsidiary continued to hold the Homeowner's mortgage loan as a direct asset on its books. Compare, **Exs. C** and **Ex. E**.

45.    When given the opportunity to do so, Chase failed to provide a specific exhibit or schedule of loan assets that were transferred between the FDIC and Chase identifying the Homeowner's mortgage loan account.

46.    Chase is known for engaging in fraudulent misrepresentations and fraudulent document practices to claim ownership of loans it does not own. See, e.g., Kalicki v. JPMorgan Chase

---

[6] All averments and allegations herein that are contrary to the lack of noteholder or mortgage holder status are stated in the alternative.

Bank, N.A., No. D063508, 2014 Cal. App. Unpub. LEXIS 4611, at *2 (June 30, 2014) ("Chase falsely claimed to be the assignee of the Kalickis' loan and recorded a false document fraudulently claiming ownership of certain assets."); Kalicki, et., al., v. JPMorgan Chase Bank, N.A., Super. Ct. No. 37-2009-00059032-CU-WE-NC; and use of Cindy Riley and her signature to fabricate assignments as in the Florida foreclosure suit against Olympia Zacharakis.[7]

47.    While the FDIC may have transferred certain assets and interests of Washington Mutual Bank to Chase, pursuant to the PAA, such assets consisted of servicing rights and contracts and, where Washington Mutual Bank was also an investor to the securitization trusts it created, rights to receive dividends therefrom.

48.    To the extent that Washington Mutual Bank held any notes and mortgages at the time of the receivership, they would have been those closed in 2008 before it had a chance to transform them into securities.

49.    Whereas Homeowner's loan was closed in January 2006, Washington Mutual Bank had previously transformed the Mortgage Loan, along with thousands of other mortgage loans, into securities and sold them to investors in the secondary market.

50.    In or about January 2006, Washington Mutual Bank did not single out the Homeowner's Mortgage Loan from among thousands of other loans, and make a special exception just for Homeowner's Mortgage Loan to withhold it from securitization.

51.    The affidavit of Robert C. Schoppe dated October 2, 2008 ("Aff. Schoppe"), provided by Chase is consistent with the conclusion that Washington Mutual Bank did not hold the Mortgage Loan at the time of the receivership, wherein it states that "JPMorgan Chase acquired certain of the assets, including all loans and all loan commitments, of Washington Mutual."

52.    The assertion that all loans and commitments of Washington Mutual Bank were transferred means and includes whatever Washington Mutual Bank may have had remaining on its books at that time, but it does not in any way include all the loans that Washington Mutual Bank ever originated or underwrote, and does not specify the Homeowner's loan.

53.    The reference to loan commitments further underscores the fact that any such loan assets transferred by the FDIC to Chase would be fresh in 2008 as recently consummated loans or pending loans on the basis of a commitment to provide a loan.

54.    Chase committed fraud upon the several state and federal courts by claiming ownership of specific loans that predated Washington Mutual Bank's second quarter loans in 2008, on the basis of the Aff. Schoppe and similar, non-specific evidence.

55.    If Homeowner's Mortgage Loan, along with hundreds of thousands of other loans that ended up in a WMABS, WMALT or other REMIC instrument, were treated as having never

---

[7] https://mfi-miami.com/2015/06/jpmorgan-chase-quits/

been securitized through fraudulent documentation and accounting practices, Chase's conduct with respect to said mortgage loans would constitute prohibited transactions for purposes of preferred tax treatment of REMICs, such that Chase would have been unjustly enriched and otherwise made whole, in part, by evading payment of 100% of net income due the IRS for said violations. See, 26 U.S.C. § 860F (Section 860F(a)(1) of the IRS tax code imposes a tax on REMICs equal to 100 percent of the net income derived from "prohibited transactions.").

56.    The affidavit of Nicole Smiley dated March 13, 2018 ("Aff. Smiley") falsely states that Chase is "the owner of the Mortgage and the Note," and same was filed in the registry of deeds and in the Land Court to permit Chase's foreclosure and other debt collection activities to proceed.

57.    On August 4, 2014, Chase filed a motion for relief from stay claiming to be the owner of the Mortgage Loan.

58.    In a letter dated February 24, 2017, Dean Cooper, managing director for Chase, represented that Chase was both the servicer and the owner of the Mortgage Loan.

59.    Chase uses the Cooper letter as part of its common tortious plan and practice of evasiveness and obfuscation as to the issue of ownership of notes and mortgages by referring to itself as both the "owner" and as the "investor."

60.    The term investor is used to refer to those who purchase securities in a real estate trust, such as an interest in a REMIC trust, where the named owner would be a trustee and serve the ownership interests of the trust in a trustee capacity.

61.    Chase used false and fraudulent claims of ownership to not only collect on the Mortgage Loan and pursue a foreclosure sale, but also to caused Homeowner to lose legal rights and protections, which further resulted in physical injury through emotional distress. Furthermore, the publication of these false statements constituted slander of title. George v. Teare, 12 Mass. L. Rep. 274 (2000).

62.    Chase has actively concealed and refused to produce a full and complete copy of the 118-page contract between the FDIC and Chase.

63.    Chase has yet to meet its burden of proving whether the Mortgage Loan was securitized into a trust instrument and whether the FDIC ever held the Promissory Note and MORTGAGE.

64.    Washington Mutual Bank, FA securitized the Homeowner's Mortgage Loan.

65.    Chase's numerous false representations and filing of false affidavits in various courts of law and the registry of deeds constitutes unfair and deceptive trade practices.

### UNCONSCIONABILITY/FRAUD
#### (NO INCOME VERIFICATION AND NO ABILITY TO REPAY)

66.    Homeowner provided tax returns and paystubs to the broker, The Mortgage Place, and

the lender, Washington Mutual Bank, that were ignored by these originators as Homeowner's true income was not reflected under section V of the Homeowner's Uniform Residential Loan Application concerning employment and income, where an estimated salary of $400,000 per year should have resulted in a monthly gross income of only $33,333 as opposed to the stated $83,333 as prepared by the loan originators.

67.    The monthly mortgage payment required under the Mortgage Loan of $17,000 exceeded 50% of Homeowner's gross monthly income.

68.    Homeowner's loan was an ARM loan with an introductory rate period of three years or less. The first payment on Homeowner's ARM loan was due on March 1, 2006 and was subject to monthly change dates with rates based, in part, on a 12-month average index of average yields of actively traded U.S. Treasury Securities adjusted to a constant maturity of one year, as published by the Federal Reserve Board in a publication entitled, "Selected Interest Rates H.15."

69.    Per the terms of the Promissory Note, at any given month, the average of the monthly yields for the last 12 months as stated in the publication, (i.e., dividing last 12 months yields by 12) would provide the index.

70.    Homeowner's loan featured an introductory rate for the initial period that was at least two per cent below the fully indexed rate. The introductory rate on Homeowner's loan was 1.625% on March 1, 2006 and the fully indexed rate pursuant to the applicable index was 4.44%, for a difference of 2.815 percentage points.

71.    The debt-to-income ratio on the Mortgage Loan made to Homeowner would have exceeded fifty per cent had the lender measured the Homeowner's debt by the monthly payments that would be due at the fully indexed rate rather than under the introductory rate. See, Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733 (2008); Thelemaque v. Fremont Inv. & Loan, 2011 Mass. Super. LEXIS 98; 28 Mass. L. Rep. 430 (2011). The loan-to-value ratio is at least 97%. See, Commonwealth v. H&R Block, Inc., 2008 WL 5970550; 25 Mass. L. Rptr. 92 (Mass.Super. 2008) (Gants, J.) (adding to the list of factors first begun in Fremont).

72.    Homeowner's appraisal was inflated and financials he provided were intentionally ignored and covered up by originators when they filled out the loan application. See, e.g., Commonwealth v. H&R Block, Inc., (supra.).

73.    The originators of the Mortgage Loan knew or should have known at the outset that Homeowner was unlikely to be able to repay it. See, Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 56 (1st Cir. 2011), quoting Fremont, supra at 748-749 ("The holding of Fremont was that [G. L. c.] 93A prohibits 'the origination of a home mortgage loan that the lender should recognize at the outset that the borrower is not likely to be able to repay.'"). See, also,

Drakopoulos v. United States Bank Nat'l Ass'n, 465 Mass. 775, 786 (2013).[8],[9]

74.    Homeowner provided the loan originators with actual financial records that demonstrated no reasonable ability to repay the loan, leaving only the secured HOME to satisfy the debt.

75.    There was no allocation of risk based on superior bargaining power of the lender over Homeowner. See, Waters v. Min. Ltd., 412 Mass. 64, 68 (1992).

76.    Moreover, Washington Mutual Bank was known for lack of oversight to mortgage brokers and encouraging bad loans and poor underwriting with commissions and bonuses to brokers for closing such loans, as it fought to compete with the likes of Countrywide Home Loans, Inc. See, e.g., Statement of Inspector General of Department of the Treasury, April 16, 2010 ("SOIG").[10] A copy of the SOIG is attached hereto as **EXHIBIT "F"**.

77.    Homeowner assumed all the risk surrounding the Mortgage Loan, while the broker who placed the loan with Washington Mutual Bank, assumed virtually none, and pursuant to Statement No. 140, *Accounting for the Transfers and Servicing of Financial Assets and Extinguishments of Liabilities*, Washington Mutual Bank, by selling the mortgage loan into a securitized trust, also assumed no risk. See, Fremont, 452 Mass. at 736 (after funding a loan,

---

[8] "The basic concept of fair lending that lenders should extend loans that they believe borrowers are able to repay is well-established under Massachusetts law. See Billingham v. Dornemann, 55 Mass. App. Ct. 166, 177-179 (2002)(where lender knows of borrower's inability to make payments according to the contract, lender may be liable for treble damages for its unfair conduct); G. L. c. 183, §§ 4 and 28C (requiring that a borrower benefit when refinancing). This requirement has also been acknowledged by both state and federal regulators. In 1997, the Massachusetts Division of Banks warned lenders against predatory lending specifically in the context of subprime lending. ADD, 001. The Division of Banks defined predatory lending as "extending credit to a consumer based on the consumer's collateral if, considering the consumer's current and expected income, . . . the consumer will be unable to make the scheduled payments to repay the obligation." Id." See, Drakopoulos, at 31-32.

[9] "Federal agencies that enforce federal consumer protection laws have long viewed lending without regard for the borrower's repayment ability as predatory and a violation of consumer protection laws. See, e.g., FTC v. Capital City Mortgage Corp., No. 98CV00237, P 28 (D.D.C, second am. complaint filed Jan. 29, 1998) (alleging home-secured loans were based on equity in homes, not the borrowers' ability to pay)(ADD. 006); United States v. Delta Funding Corp., No. 00-1982, P 17 .(E.D-N.Y. filed Mar. 30, 2000)(complaint), settled by consent decree (Apr. 2000) (alleging that subprime lender often approved loans without regard to a borrower's ability to repay and approved loans based on unverified income with no reasonable basis for believing that such income existed)(ADD. 040). Moreover, the FDIC, the United States Office of the Comptroller of Currency ("OCC"), the Board of Governors of the Federal Reserve Board ("Federal Reserve Board"), and the Office of Thrift Supervision ("OTS")(collectively the "Federal Financial Agencies") share the FTC's view. For over a decade, these agencies have warned lenders that predatory and abusive lending occurs when a lender originates a loan to a borrower who cannot repay the loan from sources other than the collateral pledged. [] (Expanded Guidance for Subprime Lending Programs (Jan. 31, 2001)); [] (Guidelines for National Banks to Guard Against Predatory and Abusive Lending Practices, OCC Advisory Letter, AL 2003-2 (Feb. 21, 2003)(stating "a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective buyers who simply cannot afford the credit on the terms being offered" and that such loans are typically underwritten based on the value of the collateral)). See, Drakopoulos, at 33-35.

[10] https://www.treasury.gov/about/organizational-structure/ig/Documents/Inspector%20General%20Thorson%27s%20WaMu%20Written%20Testimony%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.pdf

Fremont typically sold it on the secondary market, largely insulating it from losses arising from borrower default).

78.    Unlike the typical scenario where a borrower experiences "payment shock" from an adjustable interest rate increase, Homeowner began struggling at the outset due to lack of sufficient income. The lender should have recognized at the outset that the Homeowner was unlikely to be able to repay the loan. See, Drakopoulos v. United States Bank Nat'l Ass'n, 465 Mass. 775, 786 (2013); 15 USCS §§ 1639b and 1639c. (Once the interest rate increased, their payments consumed over 80% of their income, often called "payment shock." Fremont, 452 Mass. at 740 n.14.)

79.    Homeowner was unfairly surprised and disadvantaged by the terms of the loan such that it was procedurally and substantively unconscionable.  See, also, Thelemaque v. Fremont Inv. & Loan, 2011 Mass. Super. LEXIS 98; 28 Mass. L. Rep. 430 (2011).

80.    The originators acting in concert to close a loan at all costs employed such unfair and deceptive tactics as use of inflated appraisals and ignoring actual financials provided by the Homeowner, employing fraudulent and unconscionable means to sell a loan product to Homeowner that was destined to fail.

81.    Washington Mutual Bank and The Mortgage Place, acting in concert, permitted a conflict of interest whereby on the same date, the broker, The Mortgage Place, LLC, also acted as a second mortgage lender by loaning Homeowner $125,000 and receiving a mortgage on Homeowner's property for the same, particularly where the secondary financing does not appear to be disclosed in any of the subject loan closing documents, and where The Mortgage Place, LLC received a broker's commission of $75,000 from the first mortgage it brokered through Washington Mutual Bank.

82.    Washington Mutual Bank, Washington Mutual, Inc., and any John Doe entities that used the name of Washington Mutual Bank, FA misrepresented the true identity, nature and purpose of Washington Mutual Bank, FA, including misrepresenting that such an entity existed when it did not, that such an entity was a mutual bank, when no Washington Mutual entity at the time was a mutual bank, and that it was a Federal Savings Bank when the 10-Q reports and U.S. Securities and Exchange Commission ("SEC") show that Washington Mutual Bank, FA, at a time when it did exist, was not federally chartered. A copy of an online Edgar search result for Washington Mutual Bank, FA from the SEC's website is attached hereto as **EXHIBIT "G"**.

83.    Chase's adoption and enforcement of the fraudulently procured and unconscionable terms of the Mortgage Loan and ratification of same constitutes and unfair and deceptive trade practice. The Supreme Judicial Court noted that banks had been advised as early as 2001 that "[l]oans to borrowers who do not demonstrate the capacity to repay the loan, as structured, from sources other than the collateral pledged are generally considered unsafe and unsound" and unfair to borrowers. See, Commonwealth v. Fremont Inv. & Loan, 452 Mass. at 744.

### BENEFIT TO THE BORROWER

84.    Chase has accepted and advanced in conspiracy and as joint-tortfeasor the Mortgage

Loan despite the Borrower's Interest Act, <u>Mass. Gen. Laws Ann. ch.</u> 183, § 28C, prohibiting lenders from originating certain home refinancing loans that are not in the borrower's interest.

85.     Chase and its purported predecessor holders and originators knowingly made a home loan that paid off an existing home loan that was consummated within the prior 60 months or other debt of the borrower, where the refinancing was not in the borrower's interest. <u>Mass. Gen. Laws Ann. ch.</u> 183, § 28C(a).

86.     Homeowner had a prior loan with Bank of America for $3,000,000 that was dated and closed on June 28, 2005, with a lower maximum interest rate than the present loan.

87.     Homeowner's prior loan was refinanced less than 7 months later, to the current Mortgage Loan, which, for all the reasons averred hereinabove, including the fact that the loan resulted in monthly payments that exceeded 50% of the Homeowner's monthly income, and cost Homeowner another transaction expense, including the broker's $75,000 commission, could not have been in the Homeowner's interest. <u>See, Drakopoulos</u>, at 788-790.


## RESCISSION

88.     Homeowner's spouse and co-mortgagor, Maria Smith, was never provided with a Truth-In-Lending disclosure, thereby extending the right to cancel period for four (4) years. A copy of the notice conferring upon Maria Smith the right to cancel within a period of time following her receipt of the Truth-In-Lending disclosure, is attached hereto as **EXHIBIT "H"**.

89.     Thus, from January 24, 2006 to January 24, 2010, Homeowner paid 4 years' worth of finance charges that creditors were prohibited from charging. <u>See</u>, M.G.L. c. 140D, § 10(a).

90.     Homeowner and co-mortgagor, Maria Smith, hereby give notice of their cancellation and rescission of the subject loan under common law grounds of fraud and material breach, including, but not limited to, violation of M.G.L. c. 140D. (Discussed, *infra*.)

## LACK OF DEFAULT

91.     Chase and Washington Mutual Bank, FA all failed to credit the loan account for prohibited interest charges and to otherwise perform proper accounting for other prohibited charges to the loan account, which would have negating the purported event of default and otherwise substantially changed any amounts needed to cure, and instead, continued to charge the Homeowner interest on those proceeds, despite written notices and demands to cure same.

## DEBT COLLECTION VIOLATIONS

92.     At all times relevant hereto, Harmon and Chase, were engaged in trade or commerce, including as a creditor within the meaning of Massachusetts General Laws Chapters 140D, 93 § 48, 93 § 49, and 209 C.M.R. 32.00 et seq. and 940 C.M.R. 7.00 et seq. (See also, M.G.L. c. 140D, § 33(Assignee liability).

93.    Chase is considered a debt collector because the disputed debt was considered in default by Chase at the time Chase acquired it from the predecessor creditor. Chase violated the Massachusetts debt collection statute, M.G.L. c. 93, § 24 et seq., the Attorney General's Regulations promulgated thereunder (940 C.M.R. 7.00 et seq.); the Banking Commissioner's debt collection regulations (209 C.M.R. 18.00-18.24); the Attorney General's regulations promulgated under Chapters 140D and 93A (209 C.M.R. 32.00 et seq. and 940 C.M.R. 3.01 et seq.); and the substantive portions of M.G.L. c. 93, § 49 which describe unfair and deceptive trade practices.

94.    Harmon and Chase attempted to collect a debt in violation of both the letter and spirit of the Commonwealth's regulatory trade and consumer laws. (Akar v. Federal Nat'l Mort. Ass'n, 2011 WL 6288055 *8 (D. Mass. 2011)). Chase and joint-tortfeasors misrepresented the identity of the mortgage holder. (Id.)

95.    Harmon and Chase failed to account for, credit payments, or to cure prohibited interest charges to the Mortgage Loan account.

96.    Following the closing date of January 24, 2006, neither Chase, joint-tortfeasors, nor any purported predecessor holders or creditors cured the failures to provide material disclosures to Homeowner, including the provision of accurate disclosures of the APR and finance charges **within tolerable limits**, and the provision of the Truth-In-Lending disclosure to Maria Smith (the co-morgagor).

97.    Chase and/or its predecessors, failed to provide all material disclosures required by M.G.L. c. 140D, Section 10(b). Such failures included, without limitation, that the finance charge and APR were underdisclosed by more than the allowable tolerance levels.

98.    From January 24, 2006 to January 24, 2010, Homeowner paid 4 years' worth of finance charges that creditors were prohibited from charging. See, M.G.L. c. 140D, § 10(a).

99.    Chase failed and refused to credit Homeowner' account with the overpayments and to reverse finance charges against the excess balance.

100.    Overcharges and overpayments on the Mortgage Loan negate the purported event of default upon which Chase, Harmon and other joint-tortfeasors rely for their right to exercise the power of sale.

101.    Overcharges and overpayments on the Mortgage Loan render the amounts needed to cure the alleged default as stated in the notices of default, false, and the notices were thus, invalid.

102.    Harmon and Chase's failure to calculate amounts due Homeowner in their collection letters and purported notices of default or otherwise pursuant to applicable regulatory laws which govern allowable fees and charges, as well as state recoupment laws (which are expressly reserved under TILA, M.G.L. c. 140D, and UCC § 3-305), which further preserves claims for multiple statutory violations, and breaches of the mortgage loan contract, renders its notices and disclosures of amounts due or required to cure, reinstate, or redeem, false, unfair, deceptive and

invalid.

103.    Chase sent billing statements, payoff demands and quotes seeking sums well in excess of $3,300,000 despite the fact that the terms of the Promissory Note dictate that the unpaid principal balance can never exceed 110% of the amount originally borrowed (i.e., cannot exceed $3,300,000).

104.    Harmon sent a debt collection letter dated January 12, 2017, seeking the payment of sums of money well in excess of $3,300,000 despite the fact that the terms of the Promissory Note dictate that the unpaid principal balance can never exceed 110% of the amount originally borrowed (i.e., cannot exceed $3,300,000). Harmon was aware of the debt cap and intentionally ignored it as is demonstrated by Harmon having attached a copy of the Promissory Note to its debt collection letter dated May 29, 2018.

105.    All notices of default/to cure, reinstate, redeem, pay-offs are invalid for stating wrong amounts needed to cure or payoff loan, based on interest charges on an inflated principal amount. See, **Ex. A** (paragraph 4(H) of the Promissory Note).

106.    Section 4(G) of the Promissory Note requires unpaid interest in any given month be added to the principal balance, such that requests for pay-off in excess of the $3.3M cap are false, unfair and deceptive misrepresentations of the actual indebtedness and in violation of debt collection laws. See, e.g., Payoff statement dated February 10, 2012, good through February 29, 2012 requiring the payment of $3,523,636.62, a copy of which is attached hereto as **EXHIBIT "I"**.

107.    Chase failed to satisfy all pre-foreclosure requirements prior to commencing foreclosure proceedings.  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 647 (2011).

108.    Harmon and Chase knowingly made false or misleading representations about the character, extent or amount of the Mortgage Loan, and as to its status in a legal proceeding.

109.    Harmon and Chase engaged in false, deceptive, or misleading representations, communications, or means in connection with the collection of the Mortgage Loan.

110.    Harmon and Chase threatened to take and did so take non-judicial action to effect dispossession of HOME when there was no present right to possession of the HOME claimed as collateral through a court order or an enforceable security interest. M.G.L. c. 93, § 49 and 940 C.M.R. 7.00 et seq. are strict liability statutes that are to be construed liberally so as to effectuate their remedial purposes. (940 C.M.R. 7.09; See Pettway v. Harmon Law Offices, P. C., No. 03-CV-10932RG5, 2005 WL 2.365.331 at *3 (D. Mass. Sept. 27, 2005)).

111.    By sending communications falsely identifying Chase as the proper holder of a mortgage and note at the time of communicating, Harmon and Chase violated state debt collection laws and rules of conduct, which prohibit debt collectors from using unfair or unconscionable means to attempt to collect a debt.

112.    By sending communications falsely identifying Chase as the proper holder of a valid mortgage with the present right to collect monies and exercise a power of sale and to conduct a foreclosure sale at the time of communicating, Harmon and Chase violated state debt collection laws which prohibit debt collectors from using any false, deceptive or misleading representation or means in connection with the collection of any debt.

113.    By sending communications falsely identifying Chase as the proper holder of a mortgage at the time of communicating, Harmon and Chase violated state debt collection laws, which require a debt collector to disclose, either in the initial communication or in a notice within five days of the initial communication, the correct name of the creditor to whom the debt is owed.

### DEBT COLLECTION

114.    Defendants, individually, each served in the capacity of a debt collector with respect to the Mortgage Loan.

115.    Harmon and Chase collected or attempted to collect an alleged debt from Homeowner via the Mortgage Loan where said debt was owed or asserted to be owed or due another (i.e., a predecessor creditor or co-owner), and, according to Defendants, was in default at the time it was obtained. (G.L. c. 93, §24(f)(iii)).

116.    Defendants attempted to collect a debt despite not having been assigned, transferred or granted the MORTGAGE (and Promissory Note) in violation of both the letter and spirit of the Commonwealth's regulatory trade and consumer laws. (Akar v. Federal Nat'l Mort. Ass'n, 2011 WL 6288055 *8 (D. Mass. 2011))

117.    Harmon and Chase misrepresented the identity of the mortgage holder in communications with, as well as correspondences sent to the Homeowner, including those written correspondences attached as exhibits hereto or referenced herein, and caused newspaper publication of notice of foreclosure despite knowledge that Chase was not the mortgagee. See, M.G.L. c. 244, §§ 35B-35C.[11]

118.    Homeowner incurred costs including attorneys' fees having to correct, cure or confirm documentation regulated under M.G.L. c. 244, §§ 35B-35C.

119.    Defendants knowingly made false or misleading representations about the character, extent or amount of the Mortgage Loan, and as to its status in a legal proceeding.

120.    Harmon and Chase engaged in false, deceptive, or misleading representations, communications, or means in connection with the collection of the Mortgage Loan.

121.    In a letter dated January 12, 2017, Harmon purported to give notice of acceleration of a debt that had previously accelerated, thereby obfuscating and misrepresenting Homeowner legal

---

[11] (b) A creditor shall not cause publication of notice of foreclosure, as required under section 14, when the creditor knows or should know that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder. G.L. c. 244, § 35B(b).

rights concerning the Mortgage Loan.

122.    Harmon and Chase threatened to take and did so initiate non-judicial action to effect dispossession of HOME when there was no present right to possession of the HOME claimed as collateral through a court order or an enforceable security interest.  M.G.L. c. 93, § 49 and 940 C.M.R. 7.00 et seq. are strict liability statutes that are to be construed liberally so as to effectuate their remedial purposes. (940 C.M.R. 7.09; See Pettway v. Harmon Law Offices, P. C., No. 03-CV-10932RG5, 2005 WL 2.365.331 at *3 (D. Mass. Sept. 27, 2005)).

123.    By sending communications (e.g., the notice of default) falsely identifying Chase as the proper holder of an assignment at the time of communicating, Harmon and Chase violated state debt collection laws and rules of conduct, which prohibit debt collectors from using unfair or unconscionable means to attempt to collect a debt.

124.    By sending communications falsely identifying Chase as the proper holder of a mortgage loan at the time of communicating, Harmon and Chase violated state debt collection laws, which require a debt collector to disclose, either in the initial communication or in a notice within five days of the initial communication, the correct name of the creditor to whom the debt is owed.

125.    Harmon and Chase acted in a wanton, malicious and oppressive manner and in reckless disregard not only of the requirements of the law, but intentionally and in reckless disregard for the health and welfare of Homeowner.

126.    Even if Chase were determined to be the legal holder of the mortgage, or an authorized agent, it failed to properly adhere to Massachusetts law in seeking to exercise the statutory power of sale granted by the mortgage by reference to M.G.L. c. 183, § 21, as regulated by M.G.L. c. 244, §§ 11-17C, and 35A-35B.

127.    To date, Chase has failed to make a good-faith effort to determine the Homeowner's current ability to make an affordable monthly payment.

## COUNT I
### FRAUD

128.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

129.    Chase by itself and through Washington Mutual Bank, FA and other predecessors in interest made false representations of material facts with knowledge of their falsity for the purpose of inducing Homeowner to act thereon and Homeowner reasonably relied upon the representation to Homeowner's detriment.

130.    Chase fraudulently misrepresented to Homeowner and to courts of law the status of Chase as having legal right, interest and/or authority concerning the mortgage given by Homeowner. See, M.G.L. c. 244, § 35C(d).

131.    Chase, fraudulently misrepresented to Homeowner and to courts of law the authority of Chase to foreclose on Homeowner's HOME and compliance with all laws and prerequisites relating thereto, including, but not limited to, state laws requiring "certain mortgages" to be evaluated for loan modification programs. See, M.G.L. c. 244, §§ 35B-35C.

132.    To the extent Chase possesses any legal claim or right to the mortgage given by Homeowner on the HOME, Chase fraudulently misrepresented the legal right and authority of Chase to foreclose on Homeowner's HOME with respect to an alleged default on a note it does not own and an alleged default on a note for which it suffered no damage.

133.    Chase has not reunited the true owner(s) of Homeowner's note with the true owner(s) of Homeowner's mortgage.

134.    Chase commenced and/or conducted foreclosure proceedings against the Homeowner's HOME without being the present holder of the mortgage and used false documentation practices to facilitate such foreclosure practices.

135.    Harmon and Chase and  disregarded the recording laws of the Commonwealth requiring a mortgage deed, and all instruments which assign, extend, discharge and otherwise deal with the mortgage, be registered, and "shall take effect upon the title only from the time of registration." M.G.L. c. 185, § 67

136.    As a result of Chase's fraudulent misrepresentations, Homeowner has been injured by the issuance of an order permitting a foreclosure sale of the HOME and damaged in the form of efforts to enjoin or otherwise prevent Chase from so foreclosing and seeking deficiency directly from the Homeowner.

## COUNT II
### SLANDER OF TITLE

137.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

138.    Defendants used and caused to be used, filed, issued, published, suborned, etc., defamatory false statements concerning the Homeowner's rights in property.

139.    Defendants made false statements which were published with malice, and caused injury to the Homeowner.

## COUNT III
### BREACH OF CONTRACT

140.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

141.    Washington Mutual Bank, FA and successor creditors or holders breached the express

terms of the MORTGAGE by transferring interests in the Promissory Note without the MORTGAGE.

142.    Chase and predecessor creditors breached the implied obligation of good faith under the agreement with Homeowner.

143.    Chase and/or Creditors breached the implied covenant that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the contract.

144.    Chase and/or Creditors  refused to honor their agreement in a fair and equitable manner with Homeowner.

145.    As a result of the breach, Homeowner suffered damages.

## COUNT IV
### VIOLATION OF M.G.L. Chapter 183 Section 28C

146.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

147.    In refinancing the HOME for Homeowner, Chase jeopardized Homeowner's HOME by replacing a prior financing with loan and terms that were not in his best interests.

## COUNT V
### WRONGFUL FORECLOSURE

148.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

149.    Chase knew or should have known that the purported grant or transfer upon which it relied was invalid and non-existent at the time it initiated foreclosure efforts.

150.    Chase knew or should have known at the time it initiated foreclosure and other collection efforts that all loan modification opportunities under the HAMP and other related government programs had not been offered or exhausted with respect to the Homeowner.

151.    Chase knew or should have known that it failed to observe all pre-foreclosure and statutory foreclosure requirements prior to issuing the notice of foreclosure.

152.    Chase sought and seeks to exercise the power of sale in Chase's name in violation of M.G.L. c. 183, §21 which limits and reserves such power to only "the mortgagee or his executors, administrators, successors or assigns" and requires compliance with M.G.L. c. 244.

153.    Chase failed to honor contractual obligations and conditions precedent of the MORTGAGE prior to issuing the notice of default and/or notice of foreclosure.

154.    Chase knew or should have known that the Mortgage Loan it sought to enforce by collection and foreclosure had previously been canceled or was otherwise unenforceable.

### COUNT VI
VIOLATION OF M.G.L. c. 140D

155.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

156.    Homeowner brings this cause of action against Chase under M.G.L. c. 140D et seq., including, but not limited to, Sections 10 and 32.

157.    Homeowner is a consumer within the meaning of Chapter 140D.

158.    Washington Mutual Bank, FA was a creditor within the meaning of Chapter 140D in that it regularly extended or offered to extend consumer credit.

159.    HOME is a primary dwelling of Homeowner within the meaning of Chapter 140D.

160.    Chase and its predecessor Washington Mutual Bank, FA, failed to provide all material disclosures required by M.G.L. c. 140D, Section 10(a).

161.    Chase and its predecessor Washington Mutual Bank, FA, further violated M.G.L. c. 140D by instituting a finance or other charge which is prohibited from beginning to accrue on any such transaction until the termination of the rescission period provided for in this section.

162.    Chase and its predecessor Washington Mutual Bank, FA, failed to provide all material disclosures required by M.G.L. c. 140D, Section 10(b).

163.    The finance charge and APR were underdisclosed by more than the allowable tolerance levels.

164.    As a result of these violations of Chapter 140D, Defendants are liable to Homeowner, by recoupment or otherwise, for actual damages, statutory damages in the amount of $2000 in accordance with said Chapter, and costs in accordance with Section 32(a)(2)(c), plus costs and legal fees in accordance with Section 32(a)(3) and M.G.L. c. 106, § 3-305.

165.    As a result of the violation of Chapter 140D, including, but not limited to, Sections 10 and 32, Chase is liable to the Homeowner in the sum of twice the amount of any finance charge in connection with the transaction as provided in Section 32.

### COUNT VII
QUIET TITLE

166.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

167.    A legal description of the HOME is attached hereto as **EXHIBIT "J"**.

168.    Homeowner seeks fee simple title over the MORTGAGE.

169.    Pursuant to M.G.L. c. 240 <u>et. seq</u>., Homeowner bring this action against any person claiming an interest in the HOME.

170.    Neither Chase, nor Harmon has authority to sell or transfer title to this Property.

171.    Homeowner seeks an Order from this Court to release all mortgages and grant Quiet Title to Homeowner.

**<u>COUNT VIII</u>**
NEGLIGENCE

172.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

173.    Defendants had a duty to properly oversee and supervise the actions of its agents, employees and legal representatives.

174.    Defendants had a duty to make required disclosures, follow required procedures, obtain all necessary records and documentation to support their legal position, satisfy all legally required pre-requisites to proceeding to a foreclosure process, maintain consistent communications both internally and externally, and to refrain from taking negative action against Homeowner as described herein.

175.    Chase owed a duty to Homeowner as third-party beneficiaries of the Servicer Participation Agreement ("PSA") between a loan servicer and the federal government.

176.    Chase breached their obligations under the HAMP and other related government programs which the SPA incorporates.  ( <u>Parker v. Bank of America, NA</u>, Civil Action No. 11-1838 (Sup. Ct. Dec. 15, 2011), 2011 WL 6413615; <u>Barbas et al v BAC Home Loans Servicing, LP dlb/a Bank of America Home Loans et al.</u>, Court Civil Action No. 11-1153 (Sup. Ct. Dec. 19, 2011)).

177.    Defendants are liable for failing to obtain and record a mortgage discharge.

178.    Defendants failed to conduct a reasonable investigation to ensure the foreclosure readiness of the case file referred them.

179.    Washington Mutual Bank, FA owed a legal duty to Homeowner.

180.    Defendants breached their duties as described herein.

181.    Defendants' actions and omissions were the proximate and actual cause of Homeowner's

damages.

## COUNT IX
### Intentional Infliction of Emotional Distress

182.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

183.    Defendants' actions were willful, wanton, oppressive, malicious, outrageous, reckless, abusive and otherwise morally culpable and support exemplary damages.

184.    Defendants sought the wrongful foreclosure of and for Homeowner to lose their home without justification.

185.    Defendants caused negative reporting to the credit rating of Homeowner who otherwise had an excellent credit rating, and for Homeowner to lose valuable credit opportunities.

186.    Defendants caused a voided lien on Homeowner's home to remain, and failed and refused to take actions necessary to reflect or prove the voided nature of the lien, and for Homeowner to lose valuable opportunities to refinance or sell their home and to lose valuable equity in the home.

187.    Defendants believed that the consequences of their actions were substantially certain to result in causing emotional distress, harassment and embarrassment to Homeowner, damage Homeowner's excellent credit rating and cause Homeowner to lose valuable credit opportunities, and result in Homeowner's loss of opportunities to refinance or sell their home in advance of a declining market, and to lose valuable equity in the home.

188.    Defendants' conduct was reckless in that they knew or should have known that there was a high degree of risk or harm that Homeowner would suffer emotional distress by the threat of their losing their home and the lack of action on the part of Defendants and predecessor Creditors to correct or cure any of the numerous defects communicated by Homeowner about their Mortgage Loan.

189.    Defendants, by the actions and omissions described herein breached their duties and positions of trust to Homeowner.

190.    When engaging in the conduct described herein, Defendants intended to inflict emotional distress upon the Homeowner and that emotional distress was the likely result of their conduct in wrongfully and illegally attempting to collect on a debt or foreclose on the Homeowner's Mortgage Loan.

191.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in civilized community, in particular, American society wherein Defendants sought to undermine the American dream of homeownership, deprive Homeowner of their constitutionally protected land rights, and disregard all mortgage related consumer

protection and regulatory laws.

192.    The actions of Defendants were the proximate and actual cause of Homeowner distress

193.    Emotional distress suffered by Homeowner was severe and of such a nature that no reasonable person could be expected to endure it.

194.    The conduct of Defendants caused emotional distress to Homeowner, which resulted in physical symptoms, including, without limitation, inability to sleep, inability to sleep soundly, severe stomach ulcers, all of which caused pain and loss of quality of life.  Homeowner suffered sleepless nights, loss of appetite and the ability to function normally, free of mental anguish, and to focus productively and comfortably at work, and stress on his marital and family relationships.

195.    The actions of Defendants caused Homeowner to lose credit opportunities, embarrassment by the foreclosure threat, damage to credit record reported by Defendants, and caused Homeowner to lose equity in their home as described herein. The Homeowner have suffered embarrassment, fear, humiliation, and worry for a year because of the unreasonable actions of Defendants.

196.    Given that the conduct of Defendants was intentional and/or done with a reckless disregard for the welfare of the Homeowner, Homeowner are entitled to punitive damages; Defendants' actions were willful, wanton, oppressive, malicious, outrageous, reckless and abusive so as to entitle the Homeowner to punitive or exemplary damages in an amount to be determined at trial.

## <u>COUNT X</u>
BREACH OF FIDUCIARY DUTY

197.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

198.    Chase had a fiduciary duty to plan, prepare, market and conduct a foreclosure sale in such a manner so as to protect the interests of the owner of the equity of redemption.

199.    Chase had a fiduciary duty to honor Homeowner's rights to cure, reinstate, redeem, or to otherwise seek alternatives to foreclosure, including, without limitation, by selling the HOME to pay off the full balance due Chase under the Mortgage Loan and to preserve its substantial equity in the HOME.

200.    Chase breached its fiduciary duty to Homeowner through wrongful foreclosure, conspiracy, and other tortious conduct aimed at wrongfully depriving Homeowner of its equity in the HOME.

201.    Chase breached its fiduciary duty to Homeowner through fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process.

202.    Chase has a duty to act in good faith and must use reasonable diligence to protect the interests of Homeowner in the context of an extrajudicial foreclosure and exercise of power of sale. See, Williams v. Resolution GGF Oy, 417 Mass. 377, 382-383 (1994); West Roxbury Co–Op. Bank v. Bowser, 324 Mass. 489, 492 (1949) ("It is familiar law that a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor").

203.    Chase has a duty of good faith and fair dealing in the performance of their obligations under the mortgage. See, Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977); G. L. c. 106, § 1-203; Shawmut Bank, N.A. v. Wayman, 34 Mass. App. Ct. 20, 25 (1993)("[U]nder Massachusetts law, every contract contains an implied covenant of good faith").

204.    Chase breached its fiduciary duty to the mortgagee, Homeowner, to obtain for the HOME as large a price as possible. Snowden v. Chase Manhattan Mortg. Corp., 17 Mass. L. Rep. 27 (2003).

205.    Chase ignored its alternative plan with Homeowner to avoid foreclosure.

206.    Chase's breach of its fiduciary duty damaged Homeowner and caused Homeowner to lose its substantial equity in the HOME.

## COUNT XI
### CIVIL CONSPIRACY

207.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

208.    Harmon, Chase and other co-conspirators had a common plan to commit a tortious act (e.g., wrongful foreclosure, conversion, negligence, etc.).

209.    Harmon, Chase and other co-conspirators acted together and individually to provide substantial assistance, with the knowledge that such assistance was contributing to a common tortious plan.

210.    The actions of Harmon, Chase and other co-conspirators acted in concert to target a highly desirable prize, the HOME, and to deprive Homeowner of its substantial equity in HOME by racing to conduct a wrongful foreclosure sale.

211.    Chase through prior real estate transactions and dealings with Harmon and other co-conspirators built a relationship with individuals and entities it knew it could contact and work together with to carry out a tortious act concerning Homeowner and the HOME.

212.    The Defendants, acting in concert, employed the business operations and legal expertise of Harmon to enforce expired debts by foreclosure under the guise of legitimate, non-judicial foreclosure procedures.

213.    Defendants knew that they could not carry out the tortious acts by themselves, individually, because of the joint and coordinated effort required to conceal their illegal debt collection and enforcement practices among the current volume of non-expired mortgage debts.

## COUNT XII
### VIOLATION OF M.G.L. c. 93A

214.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

215.    Defendants were engaged in trade or commerce.

216.    Defendants engaged in unfair or deceptive acts or practices with respect to the Homeowner and the Mortgage Loan as described throughout the Complaint, and in the demand letter.

217.    Chase failed to honor the Homeowner and co-mortgagor's notice of rescission.

218.    The actions of the Defendants described herein were performed willfully and knowingly.

219.    On or about June 14, 2018, Homeowner, pro se, sent a 93A demand letter to Chase and other joint-tortfeasors and co-conspirators describing the unfair acts and practices and demanding relief for injuries.

220.    On or about July 18, 2018, Homeowner sent a supplemental 93A demand letter to Chase and other joint-tortfeasors and co-conspirators describing their unfair acts and practices, including but not limited to, seeking to collect and enforce a debt by falsely asserting it was owned by Chase; where the Mortgage Loan was unenforceable due to lack of formation, expiration of applicable statutes of limitations, fraud, unconscionability, and was otherwise rescinded due to mutual mistake of fact or law, and canceled on grounds of common law fraud and material breach; where Defendants misrepresented amounts due under the Mortgage Loan and misrepresented it as being in default when it was not in default and Homeowner was entitled to a credit due to accounting errors, the imposition of unlawful charges and violations of G.L. ch. 140D; and where Defendants failed to satisfy conditions precedent, such as granting a right to cure and providing a valid notice of default, filed false affidavits claiming mortgagee and holder status, compliance with modification programs pursuant to Sections 35B and 35C of Chapter 244.

221.    The refusal by Chase to make a reasonable settlement offer in response to the statutory demand letter was done in bad faith.

222.    Harmon and Chase violated the statutory requirements for initiating and/or carrying out a foreclosure, thereby violating the Massachusetts Consumer Protection Act.

223.    Harmon and Chase exercised the power of sale in violation of M.G.L. c. 183, §21 which

limits and reserves such power to only "the mortgagee or his executors, administrators, successors or assigns."

224.    Harmon and Chase failed to satisfy all pre-foreclosure requirements prior to commencing foreclosure proceedings.  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 647 (2011).

225.    Chase failed to properly administrate government loan modification programs in good faith, as required under state law. See, M.G.L. c. 244, §§ 35B-35C.

226.    Defendants failed to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.  940 CMR 3.16(3).

227.    Defendants and their predecessors in interest made representations concerning the loan transaction , including the failure to adequately disclose additional relevant information, which had the capacity, tendency or effect of misleading or deceiving borrowers with respect to a material aspect of the transaction or any service to be performed in conjunction therewith, including, but not limited to, failing to accurately, consistently or clearly disclose the identity of the lending party, failing to accurately disclose the cost of the loan transaction, failing to accurately disclose the interest to be charged for the loan, failing to provide truth-in-lending disclosure and fraudulently concealing the true ownership of the loan (940 CMR 3.16(2)).

228.    Chase failed to correct or cure the failures and violations of its predecessor, Washington Mutual Bank, FA, with respect to the origination and closing of the Mortgage Loan.

229.    Harmon and Chase imposed an unconscionable or invalid debt upon Homeowner 940 CMR 3.16(2).

230.    Harmon and Chase's debt collection activities on a debt they knew was time-barred has been declared an unfair and deceptive trade practice under 940 CMR 7.07(24).

231.    In Harmon's debt collection letter dated May 29, 2018, Harmon failed to comply with 940 CMR 7.07(24)(a) by providing the mandated statutory notice of Homeowner's legal rights and the fact that the subject debt, i.e., the Promissory Note, was too old to be enforced in a court of law.

232.    Defendants violated the Massachusetts debt collection statute, M.G.L. c. 93, § 24 et seq., the Attorney General's Regulations promulgated thereunder (940 C.M.R. 7.00 et seq.); the Banking Commissioner's debt collection regulations (209 C.M.R. 18.00-18.24); the Attorney General's regulations promulgated under Chapter 93A (940 C.M.R. 3.01 et seq.); and the substantive portions of M.G.L. c. 93, § 49 which describe unfair and deceptive trade practices

233.    The Mortgage Loan was obtained for personal, family or household purposes.

234.    Harmon and Chase threatened to take and did so take non-judicial action to effect dispossession of HOME when there was no present right to possession of the HOME claimed as

collateral through a court order or an enforceable security interest.

235.    Failure of Harmon and Chase and Creditors to comply with law caused substantial damage to the Homeowner.

236.    As a result of Harmon and Chase's unfair and deceptive conduct, Harmon and Chase are liable to Homeowner for statutory and actual and damages as described above, including, without limitation, threat of foreclosure, threat of loss of title to the HOME, cloud upon Homeowner's title, and costs and fees associated with preventing foreclosure, loss of clear title to real property, negative credit reporting, and further expenses incurred to enforce contractual, consumer and property rights.

237.    The acts and/or omissions of Harmon and Chase described herein or in attachments hereto, or imposing void, unconscionable or otherwise unenforceable contract terms against Homeowner or by violating statutory obligations, or by filing or causing to be filed with the registry of deeds and courts of law, documents that were false, or by failing to comply with the requirements for affidavits concerning personal knowledge, or by denying that certain terms, events, communications or facts existed or occurred, or by attempting to conceal the existence of certain facts or property, and attempting to mislead Homeowner and/or the legal system with respect to various business matters, handling a legitimate business dispute in bad-faith, avoiding or disregarding legal rights and required notices, agreements or like communications from Homeowner, and attempting to race to foreclosure in hopes that Homeowner will not know his rights or realize his rights are being violated, and fraudulent court filings, all constitute acts or practices declared to be unfair, deceptive and unlawful within the meaning of M.G.L. c. 93A, §§ 2, 9 and 11.

## COUNT XIII
DECLARATORY JUDGMENT

238.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference

239.    As set forth herein, a controversy exists between the parties as to the validity of the loan and Chase's ownership of the loan and Chase's authority to foreclose, and Chase's compliance with applicable statutes and regulations pertaining to the banking industry and the foreclosure process.

240. The Borrower seeks a Declaratory Judgment which, *inter alia*, invalidates Chase's claims of ownership; declares Chase's foreclosure practices to be unlawful and in violation of state laws and regulations, declares Harmon and Chase's debt collection practices as wrongful; declares that subject loan contract was never validly formed; declares loan terms unconscionable or otherwise illegal or unenforceable; declares loan and mortgage expired under applicable statutes of limitations; and such further relief as set forth herein.

## COUNT XIV
ACCOUNTING

241.    All of the factual averments contained in the foregoing Paragraphs and all of the averred facts contained in the subsequent Paragraphs are incorporated and re-averred herein by reference.

242.    All funds received by Chase and its predecessors on account of the Mortgage Loan, from any source derived, bear upon the issue of Homeowner's alleged default status, satisfaction of the Promissory Note, Chase's or its principal's damages, and the accurate determination and proper honoring of the Homeowner's right of redemption.

243.    Homeowner is entitled to a full and accurate accounting of the allocation of all payments which Homeowner has made, all funds, payments, value and income received by Chase and its predecessors  from any source on account of the Mortgage Loan, and an accurate identification of all costs and fees which Harmon and Chase has charged Homeowner with paying.

## DAMAGES

As a result of the Defendants' actions and omissions, the Homeowner has suffered monetary damages as set forth herein. The actions of Defendants were willful, wanton, oppressive, malicious, outrageous, reckless and abusive so as to entitle the Homeowner to punitive or exemplary damages in an amount to be determined at trial.

The Homeowner is also entitled to treble damages and to the costs of this action, including reasonable attorney fees pursuant to M.G.L. c. 93A (pending amendment), and other applicable sources of law.

**WHEREFORE**, the Plaintiff, Scott Smith, prays this honorable Court grant the following relief:


a.    Enter judgment for Homeowner against Defendants on all Counts of the Complaint;

b.    Rescission of the transaction;

c.    Termination of any security interest in the HOME created by the transaction;

d.    Return of any money or property given by Homeowner in connection with the Mortgage Loan transaction;

e.    Statutory damages equal to twice the finance charge in connection with this transaction for Defendants' failure to respond properly to the rescission notice;

f.    Statutory damages of $2,000 for the disclosure violations;

g.    Award of actual damages, statutory damages, attorney's fees, and costs for Defendants' debt collection violations;

h.      Stay all further foreclosure efforts and/or proceedings;

i.       Enter a Declaratory Judgment invalidating Defendants' notices of default as defective and invalid or expired;

j.       Enter a finding that Defendants violated statutory and contractual prerequisites to a foreclosure sale;

k.      Enter a Declaratory Judgment finding that Chase, in its own behalf or on behalf of another, has no jurisdiction or authority to foreclose on the plaintiffs' property;

l.       Order vacating all foreclosure proceedings;

m.    Order Chase to record a proper discharge or for land court registry of deed to accept same from the plaintiff;

n.     Declaration of the parties' rights under the Note and Mortgage considering the foregoing allegations;

o.     Declaratory judgment finding that the security interest in Homeowner's HOME is a legal nullity and is void;

p.     Award damages to Homeowner in an amount determined by the court;

q.     Treble such amount as provided by M.G.L. c. 93A, § 9(3)(to be included in amended complaint);

r.      Award costs and attorney fees to Homeowner pursuant to G.L. c. 93A and other such laws giving rise to a private right of action (e.g., G.L. c. 140D §32(a)(3); G.L. c. 244, § 35B(c)).

s.      Grant compensatory damages in an amount to be determined at trial, for personal injuries, the loss of equity and economic opportunity, and award treble damages under M.G.L. c. 93A and other applicable law;

t.       Grant compensatory damages in an amount to be determined at trial, for the incidental and consequential damages suffered by Homeowner as a result of the Defendants' conduct;

u.     Award punitive damages to Homeowner in an amount to be determined at trial; and

v.     Such other and further relief at law or equity as this Court may deem just and proper.

## **AFFIRMATIVE DEFENSES BY NON-JUDICIAL FORECLOSURE "PLAINTIFF"**

1.     Lack of Formation
2.     Expiration of Statutes of Limitations
3.     Fraud
4.     Illegality
5.     Unconscionable Contract
6.     Mutual Mistake of Fact
7.     Mutual Mistake of Law
8.     Lack of jurisdiction and authority to foreclose
9.     Rescission
10.    Lack of Damages
11.    Unclean Hands
12.    Equitable Estoppel
13.    Laches
14.    Payment
15.    First Breach

**THE PLAINTIFF DEMANDS TRIAL BY JURY
AS TO ALL ISSUES RAISED BY THE COMPLAINT**

The PLAINTIFF
Scott Smith,
By his attorney,

Date:   September 5, 2018                    /s/Brian J. Wasser_____
                                            Brian J. Wasser, BBO #633621
                                            REALTYESQUIRE, PC
                                            P.O. Box 151
                                            W. Hyannisport, MA 02672
                                            (508) 862-9999
                                            lawclaims@msn.com

Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on September 5, 2018.

/s/Brian J. Wasser